

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| MARK MCINNIS, JANE DOE, JANE DOES, § | |
| § | |
| Plaintiffs, § | |
| § | |
| vs. § | CIVIL ACTION NO. 8:05-2031-HFF |
| § | |
| MELTON TRUCK LINES, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

This is an action based on breach of contract and related torts. Currently pending before the Court is Defendant Melton Truck Line's (Defendant) motion to dismiss based on improper venue, or in the alternative to transfer venue to the United States District Court for the Northern District of Oklahoma. For the reasons stated below, the Court will grant Defendant's motion to transfer venue.

**II.   FACTUAL AND PROCEDURAL HISTORY[1]**

Plaintiff Mark McInnis (Plaintiff) was employed as an independent contractor by Defendant, a business headquartered in Oklahoma, from 2002 to 2004. At the outset of his employment, Plaintiff entered into an Equipment Lease Agreement (ELA) with Defendant in which Plaintiff

---

[1] The Court does not recite the facts of the case in full but only those relevant to Defendant's motion to transfer venue.

1

leased a 1998 Kenworth T2000 truck for use in his employment. During 2004, Plaintiff's employment relationship with Defendant ceased, with Plaintiff driving the leased truck to South Carolina. Plaintiff was subsequently arrested on a warrant issued at the instigation of Defendant and was extradited to Oklahoma. After the criminal charges against Plaintiff were dropped, he brought the present action in which he alleges breach of contract, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, and defamation. Defendant immediately moved to dismiss, or, in the alternative to transfer, based on improper venue.

## III.   DISCUSSION

A district court "in which is filed a case laying venue in the wrong division or district shall dismiss, or if be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In the instant case, the ELA contained a forum selection clause which provided:

> This Lease and all matters, claims and disputes arising out of or relating hereto shall be governed by and interpreted under Oklahoma law without regard to Oklahoma's conflicts of law provisions, and for value received, Lessee irrevocably agrees that any and all such matters, claims and disputes shall at Lessor's request be exclusively maintained in and decided by the District Court of Rogers County, Oklahoma, and any jurisdictional or venue objections to said court and any removal or transfer rights therefrom are hereby waived by Lessee.

If enforceable, this provision appears to site venue in the district and division embracing Rogers County, Oklahoma.

### A.   Law Governing the Contract

To determine whether the forum selection clause is enforceable, the Court must determine what law governs its application. In the provision cited above, the parties clearly chose Oklahoma law as the law governing all aspects of the ELA. Nevertheless, as the Court sits in diversity, it must

2

initially apply South Carolina law to determine whether the parties' choice of Oklahoma law will be given effect. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 489 (1941) (holding that a federal court sitting in diversity must apply the choice of law rules of the forum state); *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (same).

South Carolina law provides ample support for the conclusion that Oklahoma law governs the ELA. First, under South Carolina law "the validity and interpretation of a contract is ordinarily to be determined by the law of the state in which the contract was made." *Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 551-52, 436 S.E.2d 182, 184 (Ct.App. 1993). Second, South Carolina law also permits contracting parties to agree to choose which law governs the contract. *Id.*, *Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 245 n.7 (4th Cir. 1993).

Here, the contract was made in Oklahoma, and, more importantly, the forum selection clause unmistakably provides that the ELA and "all matters, claims, and disputes arising out of or relating hereto shall be governed by and interpreted under Oklahoma law[.]" Thus, given this broad language chosen by the contracting parties, Oklahoma law governs the "validity, nature, obligation, and effect" of the contract. *Id.* This selection of Oklahoma law by the parties to the ELA is presumptively valid and must be enforced unless it is "unreasonable under the circumstances." *Allen v. Lloyds of London*, 94 F.3d 923, 928 (4th Cir. 1996) (internal punctuation omitted). Clauses may be found unreasonable if

> (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

3

*Id.* Here, none of these factors is present, and the choice of law provisions are enforceable. Consequently, Oklahoma law governs the contract and, therefore, the validity of the forum selection clause as well.

### B.     Validity of the Forum Selection Clause

Under Oklahoma law, a forum selection clause "acts as a stipulation wherein the parties ask the court to give effect to their agreement by declining to exercise its jurisdiction." *Adams v. Bay, Ltd.*, 60 P.3d 509, 510 (Okl. Civ. App. 2002). These clauses are "prima facie valid and should be enforced unless they can be shown to be unreasonable under the circumstances." *Id.* Unreasonableness will be found only if "a contract was not negotiated by the parties, or is the result of overreaching or of the unfair use of unequal bargaining power, or if the forum chosen by the parties would be a seriously inconvenient one for the trial of the action." *Id.* at 511. Further, "the party who brings suit in a forum other than the selected forum designated in the contract bears the burden of persuading the court that enforcement of the forum clause would be unfair or unreasonable." *Id.*[2]

In the instant case, Plaintiff has produced no evidence demonstrating that the forum selection clause is unreasonable. Rather, Plaintiff, in his principal attack on the forum selection clause, argues that the clause should not govern because the majority of his claims arise in tort, while only one arises out of the ELA. Plaintiff's argument, however, fails under the Court of Appeals' decision in

---

[2] Federal law affords a similar presumption of validity and a similar test for determining unreasonableness. *See Vulcan Chemical Technologies, Inc. v. Barker*, 297 F.3d 332, 339 (4th Cir. 2002).

*Hitachi,* 166 F.3d at 614.  In *Hitachi*, the court, reviewing a decision rendered by a district court sitting in diversity, noted approvingly that

> [w]here a choice of law clause in the contract is sufficiently broad to encompass contract-related tort claims such as fraudulent inducement, other courts have honored the intent of the parties to choose the applicable law.

*Id.* at 628 (citing *In re Allegheny Int'l. Inc.*, 954 F.2d 167, 178 (3d Cir. 1992); *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1139 (6th Cir. 1991)).  The court then analyzed whether the contract at issue indicated that the parties intended for tort claims to be governed by the choice of law clause.  *Id.* ("We believe that the choice of law language of [the contract] indicates that the parties intended to cover more than merely contract claims.").

Applying *Hitachi* to the facts of the instant case, the Court finds that the forum selection clause of the ELA governs Plaintiff's claims in tort as well as his claim for breach of contract.  The broad language of the forum selection clause–governing "all matters, claims and disputes arising out of or relating hereto," and providing that "all such matters, claims and disputes" be decided in Oklahoma–manifests the parties' intent that Oklahoma be the forum for adjudication of claims in tort and contract arising out of the ELA.  Therefore, Plaintiff's argument against transfer must be rejected as inconsistent with the law and with the terms of the ELA.[3]

---

[3] Plaintiff's discussion of standards for transfer of venue under 28 U.S.C. *§ 1404*(a) and his lengthy discussion of the need to balance various factors weighing in favor of or against transfer are irrelevant to the Court's discussion thus far.  The Court analyzes this motion under 28 U.S.C. *§ 1406*(a), which speaks only to the proper venue for the action.  Because § 1406(a) provides that a court *shall* dismiss or transfer where the venue in which the action filed is improper, the Court addresses Plaintiff's arguments only in the context of whether the action should be dismissed or transferred to Oklahoma and not whether it should be retained in South Carolina.

**C.     Propriety of Transfer**

Therefore, having determined, first, that Oklahoma law governs the interpretation of the ELA and the validity of the forum selection clause and, second, that the ELA is valid, the Court next turns to the issue of whether the case should be dismissed or should be transferred to the Northern District of Oklahoma. Factors to be considered in this analysis include:

> (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

*Landers v. Dawson Constr. Plant, Ltd.*, 201 F.3d 436 (4th Cir. 1999) (table).

The parties have advanced competing assertions with regard to these factors. While Defendant maintains that venue would be more just in Oklahoma, Plaintiff argues that various factors render Oklahoma an inappropriate venue. The Court finds, however, that the interest of justice–an overriding factor–supports transfer. First, the Court observes that Plaintiff advanced his arguments against venue in Oklahoma in connection with his main contention that the case should remain in South Carolina. Having found that the case may not remain in South Carolina, the Court notes that Plaintiff might prefer transfer to Oklahoma over outright dismissal. *Cf. O'Neal v. Hicks Brokerage Co.*, 537 F.2d 1266, 1268 (4th Cir. 1976) (finding that district court should afford plaintiffs "an opportunity to move for transfer of the case to a district where it could have been brought."). Second, there may be issues regarding the application of an Oklahoma statute of limitations, and justice supports transfer where a dismissal could bar an action. *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 420 (1965); *Robertson v. Northcutt*, 850 F.2d 690 (4th Cir. 1988) (table). Third, Oklahoma law will govern all issues arising out of the ELA, *see supra*, thus

Oklahoma courts will be equipped to adjudicate this dispute. Fourth, the dispute bears little connection with South Carolina. Although Plaintiff was initially arrested here, he traveled through several states on his return to Oklahoma. In addition, Oklahoma was the location of the underlying activity leading to Plaintiff's arrest as well as the location where the contract was allegedly breached. Therefore, the Court finds the factors outlined above support transfer of the case to the Northern District of Oklahoma.

## IV.   CONCLUSION

Based on the foregoing, the Court concludes that the District of South Carolina is an improper venue for this case. Accordingly, the Court finds that this case should be, and hereby is, **TRANSFERRED** to the United States District Court for the Northern District of Oklahoma. The Clerk is directed to transfer the case forthwith.

**IT IS SO ORDERED.**

Signed this 28th day of September, 2005, in Spartanburg, South Carolina.

>                                s/ Henry F. Floyd
>                                HENRY F. FLOYD
>                                UNITED STATES DISTRICT JUDGE